**7IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| DAMON X MILLER, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>NEXTGEN HEALTHCARE, INC.,<br><br>      Defendant. | Case No. 1:23-cv-02043-TWT |

**<u>NEXTGEN HEALTHCARE'S REPLY IN
SUPPORT OF MOTION TO DISMISS</u>**

SMRH:4856-5980-9971.7

# TABLE OF CONTENTS

**Page**

I. Introduction..................................................................................................1

II. Plaintiffs Do Not State a Claim for Unjust Enrichment (Count III) ..............1

III. Plaintiffs Do Not State an Invasion of Privacy/Intrusion Upon Seclusion Claim (Count IV) ...........................................................................3

IV. Plaintiffs Do Not State a Breach Of Bailment Claim (Count VI)..................4

V. Plaintiffs Do Not State A Breach Of Fiduciary Duty Claim (Count VII).........................................................................................................5

VI. Plaintiffs Do Not State an O.C.G.A. § 13-6-11 Claim (Count VIII) .............7

VII. Plaintiffs Do Not State an O.C.G.A. § 13-1-370 Claim (Count IX) ..............8

VIII. California Plaintiffs Do Not State A CRA Claim (Count XI).......................10

IX. California Plaintiffs Do Not State A UCL Claim (Count XII).....................13

X. California Plaintiffs Do Not State A CLRA Claim (Count XIII) .................15

XI. California Plaintiffs Do Not State A CCPA Claim (Count XIV) .................17

XII. Illinois Plaintiff Does Not State A PIPA Claim (Count XV).......................18

XIII. Illinois Plaintiff Does Not State An ICFA Claim (Count XVI)...................19

XIV. Illinois Plaintiff Does Not State An IUDTPA Claim (Count XVII) .............21

XV. Iowa Plaintiff Does Not State An Iowa Breach Law Claim (Count XVIII) .......................................................................................................22

XVI. The Maine Plaintiff Does Not State A MUTPA Claim (Count XIX)...........23

XVII. The Maine Plaintiff Does Not State A MUDTPA Claim (Count XX) .........24

XVIII. New Jersey Plaintiffs Do Not State A CSBDA Claim (Count XXI)  25

XIX. New Jersey Plaintiffs Do Not State A NJCFA Claim (Count XXII)............26

XX. New Mexico Plaintiff Does Not State A NMUPA Claim (Count XXIII) ...............................................................................................................27

XXI. New York Plaintiff Does Not State A GBL Claim (Count XXIV)...............28

XXII. The Pennsylvania Plaintiff Does Not State A Claim Under Pennsylvania's Unfair Trade Practices And Consumer Protection Law (Count XXV) .......................................................................................30

## TABLE OF AUTHORITIES

Page(s)

Cases

*In re Accellion, Inc. Data Breach Litig.*
   2024 WL 333893 (N.D. Cal. Jan. 29, 2024).....................................................5, 18

*All Bus. Corp. v. Choi*
   280 Ga. App. 618 (Ga. Ct. App. 2006)...................................................................7

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*
   2023 WL 6216542 (D.N.J. Sept. 21, 2023).........................................................23

*Apperson v. Belton Indus., Inc.*
   1996 WL 906349 (S.D. Ga. Dec. 12, 1996) ..........................................................6

*Arcand v. Brother Int'l Corp.*
   673 F. Supp. 2d 282 (D.N.J. 2009).....................................................................28

*Archer v. Holmes*
   2018 WL 534475 (N.D. Ga. Jan. 23, 2018)...........................................................3

*Asif Kumandan v. Google LLC*
   2022 U.S. Dist. LEXIS 5658 (N.D. Cal. Jan. 11, 2022)......................................16

*Baker v. ParkMobile LLC*
   2022 WL 3704003 (N.D. Ga. Aug. 19, 2022)......................................................22

*Banks v. R.C. Bigelow, Inc.*
   2021 U.S. Dist. LEXIS 84385 (C.D. Cal. May 3, 2021) .....................................15

*Barletti v. Connexin Software, Inc.*
   2023 WL 6065884 (E.D. Penn. Aug. 17, 2023) ..................................................30

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007).............................................................................................9

*Best v. Malec*
   2010 WL 2364412 (N.D. Ill. June 11, 2010).......................................................18

*Bishop v. Shorter Univ., Inc.*
   2015 WL 13753710 (N.D. Ga. June 4, 2015)........................................................8

*Bishop v. Wood*
426 U.S. 341 (1976)......................................................................................13

*In re Blackbaud, Inc., Customer Data Breach Litig*.
2021 WL 3568394 (D. S.C. Aug. 12, 2021)...............................................18, 28

*Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*
298 Ill. App. 3d 146 (Ill. App. Ct. 1998)...........................................................21

*Camasta v. Jos. A. Bank Clothiers, Inc*.
761 F.3d 732 (7th Cir. 2014) ...........................................................................19

*Covington Square Assocs., LLC v. Ingles Mkts., Inc.*
287 Ga. 445 (2010) ............................................................................................9

*Covington v. Gifted Nurses, LLC*
2023 WL 5167366 (N.D. Ga. July 19, 2023) .....................................................5

*Cox v. Sears Roebuck & Co.*
647 A.2d 454 (N.J. 1994) .................................................................................28

*Davis v. HSBC Bank Nevada, NA*
691 F.3d 1152 (9th Cir. 2012) ..........................................................................14

*De Bouse v. Bayer AG*
922 N.E.2d 309 (2009) .....................................................................................20

*De Medicis v. Ally Bank*
2022 WL 3043669 (S.D.N.Y. Aug. 2, 2022).....................................................30

*Decarlo v. Costco Wholesale Corp*.
2020 WL 1332539 (S.D. Cal. Mar. 23, 2020) ..................................................16

*Dinerstein v. Google, LLC*
484 F. Supp. 3d 561, 579 (N.D. Ill. 2020), aff'd as modified, 73 F.4th 502
(7th Cir. 2023).................................................................................................21

*Doll v. Ford Motor Co.*
814 F. Supp. 2d 526 (D. Md. 2011)...................................................................25

*In re Equifax, Inc*.
362 F. Supp. 3d 1295 (N.D. Ga. 2019).............................................................8, 9

*Flores v. AON Corp.*
  2023 IL App (1st) 230140 ...........................................................................21

*In re Fluidmaster, Inc.*
  149 F. Supp. 3d 940 (N.D. Ill. 2016).........................................................16

*Fox v. Iowa Health Sys.*
  399 F. Supp. 3d 780 (W.D. Wis. 2019)......................................................22

*Franklin v. Gwinnett Cty. Pub. Sch.*
  503 U.S. 60 (1992)......................................................................................14

*In re Gallagher Data Breach Litig.*
  631 F. Supp. 3d 573 (N.D. Ill. 2022)................................................11, 13, 19

*Gandydancer, LLC v. Rock House CGM, LLC*
  453 P.3d 434 (Sup. Ct. 2019) ....................................................................30

*Gordon v. Chipotle Mexican Grill, Inc.*
  344 F. Supp. 3d 1231 (D. Colo. 2018)........................................................22

*Greco v. Syracuse ASC, LLC*
  218 A.D.3d 1156 (4th Dep't 2023).............................................................30

*Harrington v. 360 ABQ, LLC*
  2022 WL 1567094 (D.N.M. May 18, 2022)................................................29

*Hicks v. Eller*
  280 P.3d 304 (N.M. App. 2012) .................................................................29

*Holmes v. Countrywide Fin. Corp.*
  2012 WL 2873892 (W.D. Ky. July 12, 2012).............................................27

*Jenkins v. BAC Home Loan Servicing, LP*
  822 F. Supp. 2d 1369 (M.D. Ga. 2011) .......................................................2

*Johnson v. Nissan N. Am., Inc.*
  272 F. Supp. 3d 1168 (N.D. Cal. 2017)......................................................16

*Karter v. Epiq Sys., Inc.*
  2021 WL 4353274 (C.D. Cal. July 16, 2021)..............................................18

*Lohman v. Daimler-Chrysler Corp.*
142 N.M. 437 (N.M. App. 2007) ..............................................................29

*Marolda v. Symantec Corp.*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ......................................................14

*Marshall v. Scotia Prince Cruises Ltd.*
2003 WL 22709076 (D. Me. Nov. 17, 2003) .......................................26, 27

*McAdams v Monier, Inc.*
182 Cal. App. 4th 174 (Cal. Ct. App. 2010) ...........................................16

*McNamara v. Gov't Emps. Ins. Co.*
30 F.4th 1055 (11th Cir. 2022) ................................................................10

*In re Mednax Servs., Inc., Customer Data Security Breach Litig.*
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .....................................................7

*In re Michaels Stores Pin Pad Litig.*
830 F. Supp. 2d 518 (N.D. Ill. 2011) .......................................................19

*Mort v. United States*
86 F.3d 890 (9th Cir. 1996) .....................................................................14

*Nalley v. Gen. Motors LLC*
2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) .........................................2

*Napolitano v. Green Tree Servicing, LLC*
2016 WL 447451 (D. Me. Feb. 4, 2016) ...................................................25

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*
107 Cal. App. 4th 1336 (2003) ................................................................10

*Nordberg v. Trilegiant Corp.*
445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...................................................16

*Patton v. Experian Data Corp.*
2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) ...........................................12

*Peeples v. Caroline Container, LLC*
2019 WL 12338071 (N.D. Ga. Apr. 4, 2019) ..........................................8, 9

*Perdue v. Hy-Vee, Inc.*
455 F. Supp. 3d 749 (C.D. Ill. 2020) ...............................................................22

*Peterson v. Aaron's, Inc.*
2015 WL 5479877 (N.D. Ga. Sept. 16, 2015)....................................................3

*Poulin v. Thomas Agency*
746 F. Supp. 2d 200 (D. Me. 2010) ..................................................................25

*In re PracticeFirst Data Breach Litig.*
2022 WL 354544 (W.D.N.Y. Feb. 2, 2022).......................................................30

*Prutsman v. Nonstop Admin. & Ins. Servs., Inc.*
2023 WL 5257696 (N.D. Cal. Aug. 16, 2023) ....................................................5

*Purvis v. Aveanna Healthcare, LLC*
563 F. Supp. 3d 1360 (N.D. Ga. 2021)........................................................4, 5, 8

*S. E. Carriers, Inc. v. Atl. S. 75, Inc.*
2006 WL 2927579 (M.D. Ga. Oct. 11, 2006) .....................................................6

*Smalling's Sons v. Dunlap*
30 Ga. App. 162 (1923) .....................................................................................2

*Sonner v. Premier Nutrition Corp.*
971 F.3d 834 (9th Cir. 2020) ............................................................................14

*Specialty Ins. Agency v. Walter Kaye Assocs., Inc.*
1989 WL 120752 (D.N.J. Oct. 2, 1989) ............................................................28

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*
479 F. Supp.3d 1247 (N.D. Fla. 2020) ...............................................................3

*Stasi v. Inmediata Health Grp. Corp.*
501 F. Supp. 3d 898 (S.D. Cal. 2020)...........................................................11, 12

*State v. Weinschenk*
868 A.2d 200 (Me. 2005)........................................................................24, 25, 27

*Stephens v. Availity, L.L.C.*
2019 WL 13041330 (M.D. Fla. Oct. 1, 2019) ....................................................8

*In re SuperValu, Inc*
2018 WL 1189327 ...............................................................................................22

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*
2016 WL 2897520 (N.D. Ga. May 18, 2016)............................................12, 22

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*
861 F. Supp. 2d 898 (N.D. Ill. 2012)...................................................................20

*Tomassini v. FCA U.S. LLC*
2015 WL 3868343 (N.D.N.Y. June 23, 2015) .....................................................30

*Town and Country Motors, Inc. v. Bill Dodge Auto. Grp., Inc.*
115 F. Supp. 2d 31 (D. Me. 2000) ......................................................................26

*Trusted Transportation Sols., LLC v. Guarantee Ins. Co.*
2020 WL 2111026 (D.N.J. May 4, 2020).............................................................3

*In re USAA Data Sec. Litig.*
621 F. Supp. 3d 454 (S.D.N.Y. 2022) ...........................................................29, 30

*Vigil v. Taintor*
472 P.3d 1220 (N.M. App. 2019) .......................................................................30

*Wallace v. Health Quest Sys., Inc.*
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)................................................29, 30

*In re Waste Mgmt. Data Breach Litig.*
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) .......................................................12

*Weisenberger v. Ameritas Mut. Holding Co.*
597 F. Supp. 3d 1351 (D. Neb. 2022)..................................................................7

*In re White*
559 B.R. 787 (Bankr. N.D. Ga. 2016) ................................................................3

*Willingham v. Glob. Payments, Inc.*
2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ......................................................9, 10

*Woods v. Maytag Co.*
2010 WL 4314313 (E.D.N.Y. Nov. 2, 2015) ......................................................29

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................12, 19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
 313 F. Supp. 3d 1113 (N.D. Cal. 2018) .............................................................17

*Yenchi v. Ameriprise Fin., Inc.*
 161 A.3d 811 (Pa. 2017) ...................................................................................30

Statutes

10 M.R.S.A. § 1212(1)(L) ......................................................................................26

815 Ill. Comp. Stat. §§ 505, et seq. ........................................................................20

Cal. Bus. & Prof. Co. §§ 17200, et seq. .................................................................13

Cal. Civ. Code § 1761(b) .......................................................................................17

Cal. Civ. Code § 1761(d) .......................................................................................17

Cal. Civ. Code § 1798.80 ..........................................................................11, 12, 13

Cal. Civ. Code § 1798.100 .....................................................................................17

Cal. Civ. Code § 1798.140(ag) ..............................................................................17

N.J. Stat.Ann. § 56:8-19 ........................................................................................28

N.J. Stat.Ann. § 56:8-166 .......................................................................................27

N.Y. Gen. Bus. Law §§ 349, et seq. ...........................................................27, 28, 29

O.C.G.A. § 13-1-370 ...............................................................................................9

O.C.G.A. § 13-6-11 .................................................................................................8

O.C.G.A. § 23-2-58 .................................................................................................7

O.C.G.A. § 44-12-40 ...............................................................................................6

Other Authorities

Fed. R. Civ. P. 9(b) ..........................................................................................19, 20

## I.      Introduction

NextGen Healthcare has moved to dismiss Plaintiffs' Counts I, II, and V through XXV. (Dkt. 60.)  Plaintiffs have agreed to dismiss Count V (Breach of Implied Contract), have limited the scope of Counts XII, XIII, XIX, XXIII, XXIV (UCL, CLRA, MUTPA, NMUPA, NY GBL) to just omissions-based theories, and have limited Count XVI (ICFA) to just an alleged violation of the unfairness prong of the ICFA. (Plfs' Opposition ("Opp."), Dkt. 72.)  NextGen Healthcare's motion has already had the important effect of narrowing the scope of Plaintiffs' Complaint. Plaintiffs' Opposition has failed to salvage the legally deficient allegations.

## II.     Plaintiffs Do Not State a Claim for Unjust Enrichment (Count III)

In their Opposition, Plaintiffs do not dispute the following facts: (1) they have not directly paid any money to NextGen Healthcare; (2) they did not directly provide their "Private Information" to NextGen Healthcare in exchange for any services or goods; (3) they have not *directly* conferred any benefit on NextGen Healthcare; and (4) the only entities to which Plaintiffs made direct payments of money or conferred direct benefits are their healthcare providers. (Opp. at 9-11; Compl., ¶ 368.)  These undisputed facts doom Plaintiffs' unjust enrichment claim. *Archer v. Holmes,* 2018 WL 534475, at *5 (N.D. Ga. Jan. 23, 2018)*; see also Peterson v. Aaron's, Inc.*, 2015 WL 5479877, at *2 (N.D. Ga. Sept. 16, 2015) (indirect benefits are insufficient to sustain a claim for unjust enrichment); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp.3d 1247, 1255 (N.D. Fla. 2020) (same); *Trusted Transportation*

*Sols., LLC v. Guarantee Ins. Co.*, 2020 WL 2111026, at *2 (D.N.J. May 4, 2020).

However, Plaintiffs contend they need not have directly paid or directly conferred a benefit on NextGen Healthcare to state their claim. (Opp. at 9-10.) According to Plaintiffs, they need only allege that they conferred some benefit upon NextGen Healthcare, no matter how indirect or whether made through an intermediary—such as Plaintiffs' healthcare providers. (*Id.*) But the cases Plaintiffs cite in support undercut their position. Close inspection of both *Smalling's Sons* and *Nalley* reveal that they involve unjust enrichment claims where there *was* a direct connection and/or exchange of products between the plaintiff and defendant. *See Smalling's Sons v. Dunlap*, 30 Ga. App. 162, 162 (1923); *Nalley v. Gen. Motors LLC*, 2022 WL 18459646, at *26 (N.D. Ga. Aug. 30, 2022).

In both *Smalling's Sons* and *Nalley*, plaintiffs had actual possession of defendant's product, which they purchased through a third party, and knew their payments were benefitting defendants, even though the payments flowed through a third party. *Smalling's Sons*, 30 Ga. App. at 162, 165 ("defendant was fully aware of the fact that . . . petitioner repaired said roof at his own expense"); *Nalley*, 2022 WL 18459646 at *9 ("[defendant] benefited from the sale of [p]laintiff's vehicle by profiting more than it should have based on [p]laintiff's overpayment"). Here, Plaintiffs do not allege (nor can they allege) that they purchased any software or services from NextGen Healthcare (whether directly or indirectly). And it is undisputed that Plaintiffs were unaware of NextGen Healthcare at the time they

SMRH:4856-5980-9971.7                                        -2-

received healthcare services and paid their healthcare providers. (Compl., ¶¶ 202-204.)  What is more, Plaintiffs do not dispute that NextGen Healthcare was not aware of Plaintiffs' transactions with their healthcare providers. (Opp. at 12.)   Thus, Plaintiffs' citation to *Smalling's Sons* and *Nalley* is inapposite.

### III.    Plaintiffs Do Not State an Invasion of Privacy/Intrusion Upon Seclusion Claim (Count IV)

Despite their Opposition, Plaintiffs cannot state a claim for invasion of privacy/intrusion upon seclusion.  Plaintiffs do not challenge NextGen Healthcare's recitation of law on invasion of privacy/intrusion upon seclusion. (Opp. at 13-14.) And Plaintiffs do not dispute several critical facts: (1) a criminal third-party committed the alleged intrusion; (2) NextGen Healthcare did not intentionally misuse or disclose Plaintiffs' information; and (3) NextGen Healthcare did not unreasonably surveil Plaintiffs. (*Id.*)   On these facts, Plaintiffs' claim fails. *See Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1377 (N.D. Ga. 2021).

In an effort to manufacture "intentional interference" where plainly none exists, Plaintiffs unsuccessfully attempt to distinguish their allegations from those in *Purvis* (where the invasion of privacy/intrusion claim was dismissed). *Id.* at 1377. Plaintiffs claim that, unlike in *Purvis*, they "plausibly allege that NextGen Healthcare's affirmative choices and conduct with respect to their Private Information *rose to the level* of intentional interference with their seclusion." (Opp. at 13 (emph. added).)  Plaintiffs contend "[t]hat is because, among other reasons,

NextGen *failed* to strengthen the protections for Plaintiffs' highly-sought after Private Information." (*Id*. (emph. added).)  But this is precisely the type of allegation that failed in *Purvis*. *See Purvis*, 563 F. Supp. 3d at 1377.  In *Purvis*, plaintiff alleged the defendant "intentionally *failed* to keep Plaintiff's sensitive information safe" and *failed* to take sufficient precautions to prevent the intrusion. *Id*. (emph. added).  On those facts, the district court dismissed plaintiff's claim for invasion of privacy. *Id*. As in *Purvis*, the alleged data protection failures of NextGen Healthcare do not "rise to the level" of intentional interference.

Further, Plaintiffs' argument that the compromise of their Private Information was "offensive" to and/or has "torment[ed]" them is notably devoid of any case law in support.  This is because, courts have found that a data breach is *not* the type of invasion of privacy this tort is intended to redress. *See Covington v. Gifted Nurses, LLC*, 2023 WL 5167366, at \*10 (N.D. Ga. July 19, 2023); *see also Prutsman v. Nonstop Admin. & Ins. Servs., Inc.*, 2023 WL 5257696, at \*1 (N.D. Cal. Aug. 16, 2023); *In re Accellion, Inc. Data Breach Litig.*, 2024 WL 333893, at \*15 (N.D. Cal. Jan. 29, 2024).  Plaintiffs' claim for invasion of privacy must be dismissed.

## IV.   <u>Plaintiffs Do Not State a Breach Of Bailment Claim (Count VI)</u>

Plaintiffs' primary argument that "[b]ailment does not require *direct* contact between Plaintiffs and NextGen to give rise to a duty of care" (Opp. at 15 (emph. added)) cannot save their claim because it overlooks a critical element—an express or implied contract *between the parties* for the bailment of Plaintiffs' data. O.C.G.A.

44-12-40; *see S. E. Carriers, Inc. v. Atl. S. 75, Inc.*, 2006 WL 2927579, at \*6 (M.D. Ga. Oct. 11, 2006) (finding no bailment because there "was no express or implied agreement" between the parties).  Here, Plaintiffs do not dispute (and cannot dispute) that there was no such express or implied contract between the parties.  Rather, Plaintiffs contend that NextGen Healthcare did not need to have direct contact with Plaintiffs to owe them "some duty of care" as third-party beneficiaries of the bailment. (Opp. at 15.)  As Plaintiffs' own caselaw explains, "the duty toward third parties varies depending upon the nature of the bailment." *Apperson v. Belton Indus., Inc.*, 1996 WL 906349, at \*5 (S.D. Ga. Dec. 12, 1996).  Unlike in this case, in *Apperson*, there was an express contract for the bailment of the third-party's goods; there was no such bailment contract here.

Also fatal to Plaintiffs' claim is the contention that "NextGen had exclusive possession and control of Plaintiffs' data." (Opp. at 15.)  Undercutting Plaintiffs' theory of exclusive possession is the fact that Plaintiffs cannot simply give away or stow with another their PII.  NextGen Healthcare could not have had, and did not have, exclusive possession of Plaintiffs' PII.  Any of Plaintiffs' healthcare providers, whether they use NextGen Office ("NGO") or another electronic health records software provider, also had access to and control of Plaintiffs' PII.  Without this exclusive possession and control, NextGen Healthcare could not be a bailee of Plaintiffs' data as contemplated under O.C.G.A. 44-12-40.

## V.   <u>Plaintiffs Do Not State A Breach Of Fiduciary Duty Claim (Count VII)</u>

Plaintiffs' Opposition acknowledges that fiduciary relationships are created in one of two ways: (1) when one party "exercises a controlling influence over the will, conduct, and interest of another" or (2) "where, from a similar relationship of mutual confidence, the law requires the utmost good faith." O.C.G.A. § 23-2-58.  Plaintiffs do not contend—nor could they—that NextGen Healthcare "exercised a controlling influence" over their "will, conduct, or interests." (Opp. at 17.)  Rather, Plaintiffs argue the creation of a fiduciary duty under the second prong: "when the law requires the utmost good faith." (*Id.*)  To that end, Plaintiffs' Opposition attempts to contrive the existence of a "confidential relationship" *with NextGen Healthcare* by virtue of the mere receipt and retention of Plaintiffs' Private Information from their healthcare providers. (*Id.* at 17-18.)  Plaintiffs' efforts to construct *post hoc* a "relationship of mutual confidence" where none exists is to no avail. O.C.G.A. § 23-2-58.

First, the mere receipt and/or storage of confidential information is insufficient by itself to create a fiduciary relationship. *In re Mednax Servs., Inc., Customer Data Security Breach Litig.*, 603 F. Supp. 3d 1183, 1227 (S.D. Fla. 2022); *Weisenberger v. Ameritas Mut. Holding Co.,* 597 F. Supp. 3d 1351, 1367 (D. Neb. 2022) (refusing to "extend a fiduciary relationship to what is otherwise a regular business transaction" just because defendant collected PII); *Stephens v. Availity, L.L.C.*, 2019 WL 13041330, at *6 (M.D. Fla. Oct. 1, 2019).

Second, Plaintiffs' citation to *Purvis* and *Bishop* does not advance their position.  The fiduciary duty in *Purvis* and *Bishop* was driven by the *direct*

relationships between the parties. *See Purvis, supra*, 563 F. Supp. 3d at 1365 (finding a fiduciary relationship between a healthcare provider and a patient); *Bishop v. Shorter Univ., Inc.*, 2015 WL 13753710, at *8 (N.D. Ga. June 4, 2015) (finding a fiduciary relationship between a university and student).  Here, Plaintiffs' direct relationship is with their healthcare providers. (Opp. at 17-18.)  Plaintiffs admit that they have never had any direct relationship with NextGen Healthcare. (*Id.*)  And Plaintiffs have offered no legal support for the position that Plaintiffs' contractual and fiduciary relationship with their healthcare providers establishes an independent fiduciary duty flowing from NextGen Healthcare, a non-party, to Plaintiffs in the absence of any other direct relationship. *See All Bus. Corp. v. Choi*, 280 Ga. App. 618, 621 (Ga. Ct. App. 2006).  That is because, no such authority exists to support Plaintiffs' position and their claim must be dismissed.

## VI.    Plaintiffs Do Not State an O.C.G.A. § 13-6-11 Claim (Count VIII)

Plaintiffs' Opposition does not dispute that bad faith under O.C.G.A. § 13-6-11 requires Plaintiffs to plead "more than bad judgment or negligence . . . [It] indicates conscious wrongdoing or breach of a known duty with ill motive." *Peeples v. Caroline Container, LLC*, 2019 WL 12338071, at *7 (N.D. Ga. Apr. 4, 2019). Instead, Plaintiffs contend that they have sufficiently plead bad faith because they allege that NextGen Healthcare "abdicated its duties to use industry standard measures required to protect Plaintiffs' Private Information", "knew of its flawed data security, and it nonetheless continued to disregard its statutory and legal

obligations to protect Plaintiffs' Private Information." (Opp. at 19-20.)  Even under a generous reading, Plaintiffs' allegations do not establish NextGen Healthcare acted with "conscious wrongdoing or ill motive." *Peeples*, 2019 WL 12338071, at *7.

Plaintiffs' citation to *In re Equifax, Inc.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019) is not persuasive.  In *Equifax*, plaintiffs alleged that defendant sustained several prior data breaches and knew it lacked basic maintenance techniques and, despite that, spent only a fraction of the company's budget on cybersecurity. *Id.* at 1310.  This rose to the level of acting with a dishonest purpose and moral obliquity because it showed the defendant intentionally did not prioritize protecting the data. *Id.* at 1345.  Plaintiffs here have not alleged any facts that show NextGen Healthcare acted with any such dishonest purpose or moral obliquity.  The claim should be dismissed.

Finally, it is not premature to dismiss this claim.  Courts routinely dismiss these claims at the motion to dismiss stage. *See, e.g., Peeples*, 2019 WL 12338071, at *7.  Plaintiff misinterprets *Covington Square Assocs., LLC v. Ingles Mkts., Inc.,* 287 Ga. 445, 446 (2010). In *Covington Square*, the court made clear that when, "liability for and amount of attorney fees . . . are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor." *Id*. at 446.  NextGen Healthcare's motion was not premature.

## VII.   Plaintiffs Do Not State an O.C.G.A. § 13-1-370 Claim (Count IX)

Despite their protestations to the contrary, Plaintiffs' Opposition plainly demonstrates and reconfirms that Plaintiffs' allegations in support of their claim for

injunctive relief under Georgia's Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 13-1-370, are facially speculative. (Opp. at 21-22.)  In short, Plaintiffs' allegations of future harm rely on over-generalized statements of "the norm" (*id*. at 21 ("repeated attacks are the norm not the exception")), unsupported conclusions (*id*. at 22 ("NextGen has not provided sufficient notice identifying any remedial measures that will protect the data from future attack")), and pure supposition (*id*. (Plaintiffs' "Private Information" remains at unreasonable risk" and "NextGen will continue to misrepresent and imply that its data security practices are adequate")).  Although detailed factual allegations are not required, courts do not take as true conclusions and speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *17 (N.D. Ga. Feb. 5, 2013) (non-speculative harm is required for O.C.G.A. § 13-1-370).

Additionally, Plaintiffs argue that NextGen Healthcare "*claims* it took measures to contain the incident," but did not provide any specifics on "how NexGen's actions have remediated the root cause." (Opp. at 21.)  In other words, Plaintiffs now improperly shift the burden to NextGen Healthcare to substantiate its remediation actions in order to defeat a claim under O.C.G.A. § 13-1-370.  In other contexts, courts have not allowed plaintiffs to shift the burden of substantiation to the defendant. *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1346 (2003).

Finally, Plaintiffs' argument that GUDTPA claims do not require reliance lacks merit. Their argument is based only on the fact that *Willingham,* 2013 WL 440702 is unpublished and thereby inapplicable. However, courts may look to unpublished cases for guidance. *McNamara v. Gov't Emps. Ins. Co.,* 30 F.4th 1055, 1060 (11th Cir. 2022). In *Willingham*, the court dismissed the GUDTPA claim in part because "Plaintiffs have not pled that they read, relied upon and, thus, were harmed by Defendant's 'representations' and, even if they could replead such facts, Plaintiffs could, at most, demonstrate only past harm which is not a basis for injunctive relief under the UDTPA." *Willingham,* 2013 WL 440702, at *16. *Willingham* is directly on point because it held that allegations of future harm *and* reliance are required under the GUDTPA. *Willingham* did not find, like Plaintiffs suggest, that allegations of reliance demonstrate past harm.

## VIII. California Plaintiffs Do Not State A CRA Claim (Count XI)

As an initial matter, Plaintiffs' contention that NextGen Healthcare does not deny that its data breach notification was delayed is of no moment. NextGen Healthcare does not have to deny allegations in a motion to dismiss. Responses to allegations are for the Answer. But to be clear, NextGen Healthcare's notice was not delayed. However, rather than quibble over a question of fact (delay), NextGen Healthcare focused its argument for dismissal of Plaintiffs' Consumer Records Act ("CRA") claim on issues of law: whether Plaintiffs are "customers" under the CRA (they are not) and whether Plaintiffs have alleged injury sufficient to confer standing

to bring their CRA claim (they have not). Cal. Civ. Code § 1798.80.  Plaintiffs' Opposition offers no compelling argument to successfully refute those issues of law.

First, Plaintiffs do not dispute—and actually admit—they are not a direct customer of NextGen Healthcare. (Opp. at 24-25.)  Rather, Plaintiffs contend that they are qualifying "customers" under the CRA because they provided their Private Information "to NextGen" as a condition to and for purpose of receiving healthcare services from their healthcare providers. (*Id*. at 24.)  To be sure, as Plaintiffs have admitted in their Complaint (Compl., ¶¶ 90, 368), Plaintiffs never "provided their Private Information *to NextGen*" and, therefore, this statement in their Opposition is demonstrably false and all arguments relating thereto should be discounted.  What Plaintiffs really contend is that they are indirect purchasers of NextGen Healthcare's services and therefore qualify as "customers," citing *Stasi* and *In re Arthur* in support. (Opp. at 24-25.)  But Plaintiffs are not even indirect purchases of NextGen Healthcare's services, as their own cases reveal.

In *In re Gallagher Data Breach Litig*., 631 F. Supp. 3d 573, 581-84, 594 (N.D. Ill. 2022), the plaintiffs alleged that they gave their PII/PHI to the defendants to receive a service specifically rendered by the defendants. Here, Plaintiffs have not and cannot allege that they received any type of service from NextGen Healthcare. Furthermore, while *Stasi* addressed the CRA, it was only in the context of whether notice of a data breach was unreasonably delayed. *Stasi v. Inmediata Health Grp. Corp*., 501 F. Supp. 3d 898, 925-26 (S.D. Cal. 2020). There is *no* discussion in *Stasi*

about plaintiffs as "customers" (indirect or otherwise) under the CRA.

Plaintiffs unsuccessfully try to differentiate *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.* 2016 WL 2897520 (N.D. Ga. May 18, 2016) and *In re Waste Mgmt. Data Breach Litig.* 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022). (Opp. at 24-25.)  However, those cases are directly on point.  In *Home Depot*, the plaintiffs were not customers because they never purchased any service or product from defendant. 2016 WL 2897520, at \*5.  In *Waste Management*, a plaintiff who "entrusted his PI and/or PHI" to defendant through a third-party was also not a customer of defendant under the CRA. 2022 WL 561734, at \*582-83, \*593-94. Here, none of the California Plaintiffs purchased NextGen Healthcare's software, and their information came to NextGen Healthcare through third-parties (Plaintiffs' medical providers). (Compl., ¶¶ 423-25.)  Plaintiffs are not customers under the CRA. Cal. Civ. Code § 1798.80.

Further, Plaintiffs claim in conclusory fashion that the one-month delay resulted in a cognizable injury because it prevented them from "timely mitigating" citing a series of cases as examples.  However, Plaintiffs' cases are inapposite here. In *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, plaintiffs experienced fraud as a result of the alleged delay and data breach. 2017 WL 3727318, at \*4 (N.D. Cal. Aug. 30, 2017).  California Plaintiffs have alleged no fraud here.  In *Patton v. Experian Data Corp.*, defendant never gave notice of the data breach and plaintiffs' data was sold for use. 2018 WL 6190349, at \*2 (C.D. Cal. Jan. 23, 2018).  NextGen

Healthcare made notice and there are no allegations that Plaintiffs' data has been sold for misuse. In *Stasi,* defendant not only waited more than 81 days to notify plaintiffs but also failed to address plaintiffs' allegations of harm from delayed notification in its motion to dismiss. 501 F. Supp. 3d at 925. No such delay occurred here. In *In re Gallagher*, plaintiffs experienced identity theft and fraudulent use of their PII or PHI. 631 F. Supp. 3d at 589-90. Here, Plaintiffs concede they did not experience any fraud or identity theft. Plaintiffs' claim should be dismissed.

## IX.    California Plaintiffs Do Not State A UCL Claim (Count XII)

The California Plaintiffs have not shown that they have standing under California's Unfair Competition Law ("UCL"). Plaintiffs argue they have standing because they "were forced to purchase credit and identity monitoring services as reasonable and necessary prophylactic measures." (Opp. at 28.) However, Plaintiff Alvarado made no such allegations. (*See* Compl., ¶¶ 155-163.) As to the other California Plaintiff, NextGen Healthcare provided them with free identity monitoring services. (*Id.* ¶ 169.) Plaintiffs never allege that these services have thus far been inadequate. (*Id.* ¶¶ 351, 365.) Plaintiffs cannot manufacture UCL standing by incurring expenses that NextGen Healthcare has already financed. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012) (dismissing a UCL claim because it was premised on an avoidable injury).

Notably, Plaintiffs have narrowed their UCL claim to just an omissions-based theory. (Opp. at 28.) In their Opposition, they argue that NextGen Healthcare knew

SMRH:4856-5980-9971.7                                    -13-

that its security practices fell short of industry standards and failed to disclose such failures. (*Id*. at 30.)   But diverting attention to NextGen Healthcare's alleged "omissions" does not absolve Plaintiffs of their obligation to demonstrate and plead reliance. *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1004 (N.D. Cal. 2009). To that end, Plaintiffs' Complaint admits (and Plaintiffs do not dispute) that prior to receiving the data breach notification Plaintiffs did not know who or what NextGen Healthcare was. (Compl., ¶¶ 157, 166, 176, 185, 194, 203, 213, 223, 233, 242, 250, 259.)   Further, none of the Plaintiffs allege they saw any data security-related representations by NextGen Healthcare prior to providing their information to their healthcare provider. (*Id*. ¶¶ 156, 165, 175, 184, 193, 202, 212, 222, 232, 241, 249, 258.)  As a result, Plaintiffs have not alleged reliance on any omission by NextGen Healthcare and have failed to state a claim under the UCL.

Lastly, Plaintiffs' UCL claim fails because they do not plausibly allege they lack an equitable remedy at law.  In an attempt to avoid this conclusion, Plaintiffs argue that, at the pleading stage, they may pursue their UCL claim as an alternative remedy. (Opp. at 30-31.)  However, "it is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992); accord *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996).  Thus Plaintiffs cannot pursue equitable remedies unless they have also alleged they lack an adequate remedy at law. *See, e.g., Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("a complaint seeking

equitable relief" that does "not plead 'the basic requisites of the issuance of equitable relief' including 'the inadequacy of remedies at law'" fails); *Banks v. R.C. Bigelow, Inc.*, 2021 U.S. Dist. LEXIS 84385, at *15 (C.D. Cal. May 3, 2021) ("District court[] cases following *Sonner* have dismissed equitable claims for failure to allege an inadequate remedy at law"). Because Plaintiffs do not allege they lack an adequate legal remedy, they are not entitled to relief under the UCL. (Compl., ¶¶ 509-518.) For the reasons stated above, Plaintiffs' UCL claim should be dismissed.

## X.    California Plaintiffs Do Not State A CLRA Claim (Count XIII)

First, as with their UCL claim, Plaintiffs have narrowed their California Consumer Legal Remedies Act ("CLRA") claim to an omissions-based theory. (Opp. at 32-33.) Even still, Plaintiffs confirm that their narrowed claim requires reliance, *i.e.*, "had the omitted information been disclosed, one would have been aware of it and behaved differently." (*Id*. at 33.) Plaintiffs argue that if NextGen Healthcare had disclosed "its inadequate data security practices . . . Plaintiffs would not have provided their Private Information *to providers* using NextGen's services." (*Id*. (emph. added).) However, this assertion does not appear in the paragraphs the Plaintiffs cite from the Complaint. (Compl., ¶¶ 161, 171.) Indeed, in their Complaint, Plaintiffs admit that prior to the data breach Plaintiffs were completely unaware of NextGen Healthcare or any of its alleged data security measures. (*Id*. ¶¶ 156-57, 165-66, 175-76, 184-85, 193-94, 202-03, 212-13, 222-23, 232-33, 241-42, 249-50, 258-59.) In other words, Plaintiffs could not, and did not, rely on any

omission that would have changed their course of conduct.

Second, Plaintiffs do not have standing under the CLRA because they are not "customers" of NextGen Healthcare. Plaintiffs concede this point. (Opp. at 33-34.) Plaintiffs instead argue they are indirect customers with standing. However, even under an indirect customer theory, a plaintiff must have received defendant's service or good, albeit from a third-party. *Asif Kumandan v. Google LLC*, 2022 U.S. Dist. LEXIS 5658, at \*47 (N.D. Cal. Jan. 11, 2022). Furthermore, none of Plaintiffs' cases show that they have standing under the CLRA: Plaintiffs did not purchase NextGen Healthcare's software, unlike in *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 951-52 (N.D. Ill. 2016). They never used NextGen Healthcare's software, unlike in *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1183 (N.D. Cal. 2017) and *McAdams v Monier, Inc.*, 182 Cal. App. 4th 174, 186 (Cal. Ct. App. 2010). NextGen Healthcare never directly charged Plaintiffs a fee, unlike in *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1087, 1095 (N.D. Cal. 2006), and Plaintiffs do not allege that their healthcare providers were required to pay some of Plaintiffs' medical fees to NextGen Healthcare, unlike in *Decarlo v. Costco Wholesale Corp.*, 2020 WL 1332539, at \*9 (S.D. Cal. Mar. 23, 2020). Therefore, Plaintiffs lack standing even under an "indirect" customer theory.

Third, Plaintiffs contend that whether NextGen Healthcare's software is a good or service for purposes of the CLRA will depend on the particular facts of each case. (Opp. at 35.) But Plaintiffs' citation to *In re Yahoo! Inc. Customer Data Sec.*

*Breach Litig.*, 313 F. Supp. 3d 1113, 1141-42 (N.D. Cal. 2018) is inapposite because Yahoo offers services that consumers can use for personal or household purposes. NextGen Healthcare does not. And Plaintiffs do not dispute that the CLRA provides a claim *only* for "consumers" who purchase "any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). This excludes "services" for "commercial or business use." *Id.* § 1761(b). NextGen Healthcare's NGO software is not a service covered by the CLRA because the software is used to operate healthcare providers' practices. (Compl., ¶¶ 1, 28, 30, 35.) Therefore, Plaintiffs have not sufficiently shown that NextGen Healthcare's NGO is a good or service under the CLRA. For all of these reasons, Plaintiffs' CLRA claim should be dismissed.

## XI.   California Plaintiffs Do Not State A CCPA Claim (Count XIV)

The California Plaintiffs' California Consumer Privacy Act ("CCPA") claim should be dismissed because NextGen Healthcare is a "service provider" under the CCPA and there is no private right of action against service providers (while there is against businesses). A "service provider" is an entity "that processes information on behalf of a business and to which the business discloses a consumer's personal information for a business purpose pursuant to a written contract." Cal. Civ. Code § 1798.140(ag). Plaintiffs' allegations show that NextGen Healthcare meets the service provider definition: They allege that NextGen Office stores information entered by a healthcare provider in a central location so that "information on an

individual can be created, gathered, managed, and consulted by authorized clinicians and staff within one health care organization." (Compl., ¶¶ 31-32, 34, 82.)

Plaintiffs' cited cases do not dictate otherwise. In *In re Blackbaud, Inc., Customer Data Breach Litig*., 2021 WL 3568394, at *5-6 (D. S.C. Aug. 12, 2021), defendant was a business because it was a registered data broker that collected and sold personal information to third-parties. In *Karter v. Epiq Sys., Inc*., 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021), defendant was a business because it did not just process data—as a class action settlement administrator, it also sent notice to class members and received and processed opt-out notices, in addition to managing a claims database. On the other hand, as in *Accellion*, NextGen Healthcare has no input or interaction with Plaintiffs' data other than to store it, making it a service provider under the CCPA. 2024 WL 333893, at *11-12 (finding a file transfer site that had no input, control, or interaction with plaintiffs' information was a service provider). Plaintiffs' CCPA claim should be dismissed.

## XII.   Illinois Plaintiff Does Not State A PIPA Claim (Count XV)

Plaintiffs do not dispute that there is no private right of action under the Illinois Personal Information Protection Act ("PIPA") (Opp. at 38). *See Best v. Malec*, 2010 WL 2364412, at *7 (N.D. Ill. June 11, 2010). Rather, Plaintiff contends she has standing to pursue her PIPA claim because it can be used to support a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). (Opp. at 38.) However, simply because a violation of PIPA can operate

SMRH:4856-5980-9971.7                                     -18-

as "an unlawful practice" under the ICFA does not mean an individual Plaintiff can pursue a private right of action *for a violation of PIPA*, nor does a violation of ICFA confer standing under PIPA. And Plaintiffs offer no support to suggest otherwise. For this reason alone, Plaintiff's PIPA claim must be dismissed.

## XIII. Illinois Plaintiff Does Not State An ICFA Claim (Count XVI)

The Illinois Plaintiff defends her ICFA claim under only the unfairness prong of the statute, and not under the deception prong. (Opp. at 40.) Plaintiff's allegations under the deception prong should therefore be dismissed. (Compl., ¶¶ 564, 567, 569.)

As to Plaintiff's ICFA claim under the unfairness prong, and contrary to Plaintiffs' Opposition, Plaintiff's claim is nevertheless subject to Rule 9(b) because it "sounds in fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (holding a "claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements"). Plaintiff alleges, for instance, NextGen Healthcare violated the ICFA by "misrepresenting" and "omitting, suppressing, and concealing" material facts. (Compl., ¶¶ 564(d), (e), (g) and (h).) These allegations are a species of fraud and Rule 9(b) applies.

Plaintiff does not dispute, and therefore concedes, that a "consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant." *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (2009). Because Plaintiff

does not allege awareness of NextGen Healthcare or receipt of any of its purported data security statements (Compl., ¶¶ 1, 5, 28, 30, 184), her ICFA claim must fail.

In an effort to paint herself as a "consumer" under the ICFA, Plaintiff contends that direct privity is not required between the consumer and the business in question under the ICFA. (Opp. at 42.) Whether or not direct privity is required is of no consequence because the Plaintiff must still have purchased merchandise or services for her personal use to be a "consumer" under the ICFA. *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 910-11 (N.D. Ill. 2012), citing 815 ILCS 505/1(e). As with the other Plaintiffs, the Illinois Plaintiff did not purchase software or services from NextGen Healthcare. Plaintiff's healthcare provider purchased NextGen Office for the business purpose of running the medical practice, and Plaintiff visited her healthcare provider in order to receive medical services. At most, Plaintiff left her healthcare provider's office with a diagnosis, but she did not leave with NextGen Office software for her personal use. Thus she lacks standing to pursue a claim under the ICFA.

Finally, Plaintiff's Opposition fails to establish that Plaintiff suffered damages or injury sufficient to state a claim under the ICFA. *Dinerstein v. Google, LLC,* 484 F. Supp. 3d 561, 579 (N.D. Ill. 2020). As the Opposition confirms, "Courts have repeatedly held that mitigation expenses are concrete injuries when data breach victims *have also demonstrated some misuse* of the stolen data traceable to the data breach." (Opp. at 41 (emph. added).) But here, the Illinois Plaintiff incurred no

SMRH:4856-5980-9971.7                                          -20-

mitigation expenses and does not allege misuse of her information. (*Id*.; Compl., ¶¶ 187-88.)  Therefore, she has not alleged a cognizable injury under the ICFA and dismissal of the claim is appropriate. *Flores v. AON Corp*., 2023 IL App (1st) 230140, at \*P43 (upholding dismissal).

## XIV.  Illinois Plaintiff Does Not State An IUDTPA Claim (Count XVII)

The Illinois Plaintiff's Illinois Uniform Deceptive Trade Practice Act ("IUDTPA") claim should be dismissed because, as her Opposition concedes, she has only alleged a speculative risk of future harm (Opp. at 43), and this is not sufficient under the statute. *In re SuperValu, Inc, Customer Data Security Breach Litig*., 2018 WL 1189327, at \*15 (finding the possibility of a future data breach insufficient to support a claim under the IUDTPA); *see also Fox v. Iowa Health Sys*., 399 F. Supp. 3d 780, 799-800 (W.D. Wis. 2019) (finding risk of future data beach insufficient to allege harm, even where defendant had previously suffered a data breach impacting plaintiff); *Perdue v. Hy-Vee, Inc.,* 455 F. Supp. 3d 749, 773 (C.D. Ill. 2020) (finding risk of future fraudulent activity not actionable under IUDTPA).

Rather than responding to this authority, Plaintiff argues that in data breach cases courts have routinely held declaratory and injunctive relief claims are routinely allowed to proceed on allegations that defendant continues to possess plaintiff's data and that defendant's inadequate data security measures continue to put plaintiff's privacy information in jeopardy. (Opp. at 43.)  But, none of the cases cited find that an ***IUDTPA*** claim should be allowed to proceed. *See In re: Home Depot*, 2016 WL

2897520, at * 5 (holding that the federal Declaratory Judgment Act allows plaintiff to ask for an injunction); *Baker v. ParkMobile LLC*, 2022 WL 3704003, at *10 (N.D. Ga. Aug. 19, 2022) (same); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1251-52 (D. Colo. 2018) (pursued under the California UCL).  Thus, Plaintiff has not alleged sufficient facts to state an IUDTPA claim.

**XV.    Iowa Plaintiff Does Not State An Iowa Breach Law Claim (Count XVIII)**

The Iowa Plaintiff's Iowa Private Information Security Breach Protection Law claim should be dismissed because the Plaintiff has not alleged facts sufficient to show her injury.  Particularly, the she did not allege any harm that resulted from being notified within one-month of the data breach. (Compl., ¶¶ 194, 197.) Plaintiff's assertion that her inability to take "meaningful, proactive, and targeted mitigation measures to secure [her] Private Information and accounts" due to the passage of one month does not "explain how [she] would have suffered less damages had [Defendant] notified [her] sooner." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2023 WL 6216542, at *7 (D.N.J. Sept. 21, 2023), citing *Fox*, 399 F. Supp. 3d at 801 (interpreting Iowa law; "Because plaintiffs do not explain how they would have suffered less damages had [Defendants] notified them sooner, the court will dismiss their claims").

Plaintiff argues that *In re Am. Med. Collection Agency* is inapposite because there the plaintiffs merely alleged their information was available on the dark web. (Opp. at 44, n. 8.)  But, Plaintiff's claim is similarly situated because she has not

alleged *any* damage whatsoever. *In re Equifax* also does not control because there the plaintiffs explained what they would have done if they had learned of the breach sooner (frozen their accounts), but the Iowa Plaintiff makes no such allegations. (*C.f.* Opp. at 44 *with* Compl., ¶¶ 196-98.)  For these reasons, Plaintiff's claim under the Iowa Private Information Security Breach Protection Law should be dismissed.

**XVI.** **The Maine Plaintiff Does Not State A MUTPA Claim (Count XIX)**

The Maine Plaintiff has now abandoned his Maine Unfair Trade Practices Act ("MUTPA") claim based on a purported misrepresentation by NextGen Healthcare and is pursuing this claim solely "based on omissions." (Opp. at 45.)  His claim based on misrepresentations should be dismissed. (Compl., ¶¶ 593(d)-(e)-594.)

Plaintiff's omissions-based MUTPA claim is still subject to dismissal because he has failed to plead reliance as required.  Specifically, he had to allege the "material representation, omission, act or practice" was "likely to affect [his] choice of, or conduct regarding, a product." *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). Plaintiff has not (and cannot) allege reliance:  The Complaint is devoid of allegations that he received, read, or saw *any* data security-related representations by NextGen HealthCare prior to selecting his healthcare provider or providing information to his healthcare provider. (Compl., ¶¶ 202-204.)  For that reason, Plaintiff's arguments about reliance are implausible—how could he rely on omissions or change his course of conduct if he was entirely unaware of NextGen Healthcare.

The MUTPA claim also fails because Plaintiff failed to allege a loss of money

or property. Plaintiff argues he alleged a loss of money or property because "he was a victim of the Data Breach" and there is "value" to Private Information because it "can be sold." (Opp. at 47.) But, to recover under MUTPA, a plaintiff must allege actual damages. *See Poulin v. Thomas Agency*, 746 F. Supp. 2d 200, 206 (D. Me. 2010). Plaintiff's general allegation that Private Information "can be sold" does not establish a sale occurred that reduced the value of his PII. Thus, his allegations fail to establish a loss of money or property. *Accord, id.* (finding plaintiffs "have not identified any actual harm suffered" because "[w]hile … a fifty point credit score difference *can* have a dramatic effect … [plaintiff] have pointed to no evidence [] any of this actually occurred.") (emph. added).

## XVII. The Maine Plaintiff Does Not State A MUDTPA Claim (Count XX)

The Maine Plaintiff's generalized assertion NextGen Healthcare's omissions created a "likelihood of confusion or misunderstanding" fails to establish a MUDTPA claim. (Opp. at 48.)  Plaintiff relies on 10 M.R.S.A. § 1212(1)(L), which prohibits conduct that "similarly creates a likelihood of confusion or misunderstanding." But "not just any confusion or misunderstanding will do; the 'similarly' refers back to confusion about source or origin." *Town and Country Motors, Inc. v. Bill Dodge Auto. Grp., Inc.*, 115 F. Supp. 2d 31, 33 (D. Me. 2000). Plaintiff has simply not alleged NextGen Healthcare's alleged omissions specifically created "a likelihood of confusion or misunderstanding … about the source or origin of goods or services." *Id*. Thus, the MUDTPA claim should be dismissed.

The MUDTPA claim should also be dismissed because MUDTPA does not reach extraterritorial events. In order to establish MUDTPA has extra-jurisdictional application, "alleged violations" of MUDTPA need to take place in Maine. *Marshall v. Scotia Prince Cruises Ltd.*, 2003 WL 22709076, at *7 (D. Me. Nov. 17, 2003). Plaintiff has failed to allege that any of the activity related to the data breach specifically took place in Maine. Thus, Plaintiff cannot sustain a MUDTPA claim because MUDTPA does not apply extraterritorially. In response to NextGen Healthcare's pleading challenge, Plaintiff identifies allegations that the courts have already determined are irrelevant:  that Plaintiff is a Maine citizen and NextGen Healthcare advertised or sold its software in Maine (Opp. at 49). *Marshall,* 2003 WL 22709076, at *7 ("The fact that the courts of Maine have jurisdiction over the defendant has no effect whatsoever on the questions whether [MUDTPA] has extra-jurisdictional application.").

## XVIII.   <u>**New Jersey Plaintiffs Do Not State A CSBDA Claim (Count XXI)**</u>

The New Jersey Plaintiffs' CSBDA claim should be dismissed. First, Plaintiffs acknowledge they can enforce the CSBDA through the NJCFA. (Opp. at 50.) Plaintiffs therefore cannot assert a standalone CSBDA claim. N.J.S.A. § 56:8-166; *Holmes v. Countrywide Fin. Corp*., 2012 WL 2873892, at *13 (W.D. Ky. July 12, 2012) (the CSBDA provides no stand-alone private right of action).

Plaintiffs also fail to state a CSBDA claim because they do not plead an ascertainable loss from the alleged delay in NextGen Healthcare's sending of its

breach notification letter. Plaintiffs acknowledge this pleading requirement, but have only alleged harm attributed to the fact of the data breach and not any harm stemming from an alleged delay in notification. (Compl., ¶¶ 215-16, 225-26, 235-36.).

## XIX.  New Jersey Plaintiffs Do Not State A NJCFA Claim (Count XXII)

The New Jersey Plaintiffs have failed to state a claim under the NJCFA. First, they have failed to establish they were "consumers" with standing under the statute. Plaintiffs cite no caselaw to support their conclusion they were consumers, but instead point to the "legislative intent for the NJCFA". (Opp. at 51-52.) However, and despite this purported history, the courts have interpreted the NJCFA as providing a remedy only to consumers who purchased a product from the defendant. *In re Blackbaud, Inc.*, 2021 WL 3568394, at \*11-12; *Specialty Ins. Agency v. Walter Kaye Assocs., Inc.*, 1989 WL 120752, at \*5 (D.N.J. Oct. 2, 1989). Plaintiffs made no attempt to distinguish these cases. (Opp. at 51-53.) Plaintiffs never purchased a product from NextGen Healthcare, are therefore not "consumers" under the NJCFA, and this claim should be dismissed.

Plaintiffs also failed to sufficiently allege the causation element of this claim. Plaintiffs cannot avoid there is no connection between NextGen Healthcare's purported omissions and Plaintiffs' receipt of medical care from their healthcare providers. (*See* Compl., ¶¶ 622-624.) Plaintiffs also failed to allege they were aware of NextGen Healthcare before receiving the data breach notification letter. (Compl., ¶¶ 212-214, 222-224, 232-234.) Plaintiffs' NJCFA claim should be dismissed.

SMRH:4856-5980-9971.7                                           -26-

## XX.    New Mexico Plaintiff Does Not State A NMUPA Claim (Count XXIII)

The New Mexico Plaintiff has abandoned his misrepresentation-based NMUPA claim, pursuing instead only an omissions-based claim. (Opp. at 54.) His claim based on misrepresentation must be dismissed. (Compl., ¶¶ 633(d)-(e)-635.)

Plaintiff's omissions-based NMUPA claim is also subject to dismissal because Plaintiff did not plead plausible facts that NextGen Healthcare's omissions were "knowingly made in connection with the sale." *Harrington v. 360 ABQ, LLC*, 2022 WL 1567094, at *5 (D.N.M. May 18, 2022) ("[a] misleading statement can include an omission."). The only "sale" with NextGen Healthcare was the healthcare providers' purchase of NGO, which Plaintiff did not participate. Plaintiff has not and cannot allege he purchased any software from NextGen Healthcare.

In an attempt to save this claim, Plaintiff argues there was a "downstream sale" with NextGen Healthcare. The "downstream sale" concept, which was first put forth in *Lohman v. Daimler-Chrysler Corp.*, 142 N.M. 437, 443 (N.M. App. 2007), was clarified two years later in *Hicks v. Eller*, 280 P.3d 304, 309 (N.M. App. 2012), where the court explained that the doctrine "stand[s] for the proposition that the plaintiff must have sought or acquired goods or services and the defendant must have provided goods or services." *Hicks* forecloses Plaintiff's NMUPA claim because the Complaint lacks allegations that Plaintiff "sought or acquired" services "that were at some point sold by" NextGen Healthcare. Plaintiff visited his healthcare provider to obtain healthcare from that provider, not to obtain storage of his PII. Because

Plaintiff cannot plausibly allege that he purchased anything from NextGen Healthcare, he lacks standing to assert a NMUPA claim. *Accord, Vigil v. Taintor*, 472 P.3d 1220, 1230 (N.M. App. 2019) (finding NMUPA does not "encompass claimants who did not actually purchase anything"); *GandyDancer, LLC v. Rock House CGM, LLC*, 453 P.3d 434 (2019).

**XXI. <u>New York Plaintiff Does Not State A GBL Claim (Count XXIV)</u>**

Like Plaintiffs before him, the New York Plaintiff has limited his statutory claim to an omissions-based theory. (Opp. at 55-56.)  Thus his GBL § 349 claim based on misrepresentations should be dismissed. (Compl., ¶¶ 640(d)-(e)-641.)

The New York Plaintiff's omissions-based GBL § 349 claim should also be dismissed because he did not allege exposure to NextGen's purportedly deceptive conduct. While "justifiable reliance on the alleged [] omission is not a requisite element for a claim under Section 349, *a plaintiff must plausibly allege he or she was exposed to the deceptive conduct in the first instance*." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 472 (S.D.N.Y. 2022) (emph. added). Courts dismiss Section 349 claims if "plaintiffs do not plausibly allege they were ever exposed to any purportedly deceptive [] omission … prior to the data breach." *Id.* Like the other Plaintiffs, the New York Plaintiff has failed to allege such exposure. (Compl., ¶¶ 249-251.) Because the Plaintiff was not "exposed to any purportedly deceptive misrepresentation or omission … prior to the data breach at all," his § 349 claim should be dismissed. *In re USAA*, 621 F. Supp. 3d at 472.

Plaintiff's Section 349 claim should also be dismissed because his only purported "actual damages" are for speculative "diminution in value of his Private Information." (Opp. at 56.) These allegations are not sufficient. *In re PracticeFirst Data Breach Litig.*, 2022 WL 354544, at *7 (W.D.N.Y. Feb. 2, 2022) (finding plaintiffs "failed to allege a concrete or actual injury based on diminution in value of their PHI and PII as a result of the data breach"); *see also De Medicis v. Ally Bank*, 2022 WL 3043669, at *6 (S.D.N.Y. Aug. 2, 2022) ("speculative allegations regarding the value of [his] [p]rivate [i]nformation on that black market and how [his] [p]rivate [i]nformation diminished in value" are insufficient); *Greco v. Syracuse ASC, LLC*, 218 A.D.3d 1156, 1158 (2023) ("plaintiff has not alleged that any of the information purportedly accessed by the unknown third party has actually been misused.") Thus, Plaintiff's general allegations about "diminution in value of his Private Information" are insufficient to state a claim.

Plaintiff's alternative damages theory for "benefit of the bargain" damages does not withstand scrutiny. (Opp. at 56-57.)  There was no "bargain" between Plaintiff and NextGen Healthcare. Plaintiff received services from his healthcare provider. He was not aware of NextGen Healthcare before receiving the data breach notification letter. *Wallace* is inapposite. (*Id.* at 57.)  The plaintiffs in *Wallace* plausibly plead damages as part of their contract with and direct payment to the defendant. 2021 WL 1109727, at *6.  For the foregoing reasons, the GBL § 349 claim should be dismissed.

## XXII. The Pennsylvania Plaintiff Does Not State A Claim Under Pennsylvania's Unfair Trade Practices And Consumer Protection Law (Count XXV)

The Pennsylvania Plaintiff's UTP claim should be dismissed because she has not alleged any justifiable reliance on NextGen Healthcare. Plaintiff concedes that reliance on a misrepresentation is required to state a claim. (Opp. at 57.) She argues that she provided her PII to her healthcare provider to receive healthcare services and reasonably expected it to be kept safe. (*Id.*) Notably absent from her argument is any allegation that she was even aware of a representation by NextGen Healthcare prior to obtaining services from her healthcare provider – nor can she allege this as she has already confirmed she was not aware of NextGen Healthcare until she received the data breach notification letter. (Compl., ¶¶ 258-260.)

Plaintiff argues that NextGen Healthcare was under a duty to disclose information to her because they were in a fiduciary relationship. (Opp. at 58.) First, this is not responsive to NextGen Healthcare's challenge to this claim. Second, under Pennsylvania law, a fiduciary relationship requires that a plaintiff cede decision-making authority to a defendant who wields "overmastering influence." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 823 (Pa. 2017); *Barletti v. Connexin Software, Inc.*, 2023 WL 6065884, at *2 (E.D. Pa. Aug. 17, 2023). Facts of "overmastering influence" are plainly absent in this case. (*See, e.g.*, Opp. at 58.) The UTP claim should be dismissed.

Respectfully submitted this 9th day of April, 2024.

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

/s/ Kari M. Rollins
Kari M. Rollins
Charles Glover
30 Rockefeller Plaza, 39th Floor
New York, NY  10112
212.653.8700
krollins@sheppardmullin.com
cglover@sheppardmullin.com

Abby H. Meyer (admitted *pro hac vice*)
Brian M. Daucher (admitted *pro hac vice*)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
714.513.5100
ameyer@sheppardmullin.com
bdaucher@sheppardmullin.com


*Attorneys for NextGen Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Kari Rollins
Kari Rollins

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that on April 9, 2024, the foregoing complies with the font and point selection approved by this Court in Local Rule 5.1(B). This paper was prepared on a computer using 14-point Times New Roman, double-spaced.

/s/ Kari Rollins
Kari Rollins